IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| **JASON LEE WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:11-0529 |
| | ) | |
| **STATE FARM MUTUAL AUTOMOBILE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed a Motion Regarding Sufficiency of Objections to Plaintiff's Requests for Admissions (Document No. 27.) and a Motion to Compel Defendant to Respond to Plaintiff's Interrogatories and Requests for Production of Documents (Document No. 32.). Defendant has filed a Motion to Quash Notice of Second Rule 30(b)(6) Deposition. (Document No. 37.) Having considered the issues presented by the parties Motions, the Court hereby denies Plaintiff's Motions and grants Defendant's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint in this matter in the Circuit Court of Wyoming County, West Virginia on June 30, 2011. Plaintiff claims that while driving his car on March 20, 2010, he was involved in an accident with Mr. James Ayers who was riding a motorcycle. Plaintiff and Mr. Ayers had passengers in and on their vehicles. Mr. Ayers had insurance through GEICO Indemnity Company ($50,000 per person and $100,000 per occurrence), and Plaintiff had coverage through Defendant ($100,000 per person Underinsured Motor Vehicle Coverage and $25,000 limit on

Medical Payments Coverage).[1] Three persons were injured in the accident, and GEICO paid Plaintiff $15,000 and the other two injured persons $35,000 and $50,000 exhausting its per occurrence limit of $100,000. Plaintiff had medical expenses of $9,441.55, and Defendant paid $8,519.70 under its Medical Payments Coverage. In May, 2011, Plaintiff requested that Defendant make an offer in settlement of his underinsured motorist coverage claim, and in June, 2011, Defendant offered $250 to settle that claim. Defendant conceded that the value of Plaintiff's claim was $20,396.49 and offset the $15,000 which GEICO paid Plaintiff and the $8,519.70 paid under its Medical Payment Coverage which totaled more than the value of Plaintiff's underinsured motorist coverage claim. In Count I of his Complaint, Plaintiff seeks declaratory relief claiming that the Uninsured Motorist Coverage provision in Defendant's insurance policy providing that Defendant would pay the amount of all damages resulting from bodily injury minus any amount paid under the Medical Payments Coverage of the policy, the medical payments coverage of any other policy, or other vehicle insurance violates W.Va. Code § 33-6-31(b) which provides that "[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." Plaintiff therefore requests that the Court declare "that State Farm is not entitled to an offset from the amount paid under the Medical Payments Coverage portion of the policy for claims under the Underinsured Motor Vehicle Coverage portion of the Policy as the foregoing policy language from the Policy is and has been in derogation of West Virginia law and public policy and, thus, is and has been void and unenforceable since its adoption." In Count II of his Complaint, Plaintiff requests monetary relief under Defendant's Underinsured Motor Vehicle Coverage

---

[1] Apparently, Plaintiff was not a named insured under the insurance policy in issue in this case but Raymond and Marsha Blankenship were. See Document Nos. 3 (Defendant's Answer) at ¶ 13, and 35 at footnote 2.

claiming that Mr. Ayers operated his motorcycle negligently causing Plaintiff's injury and was underinsured.

Defendant removed the matter to this District Court on August 8, 2011. (Document No. 1.) Defendant filed its Answer on August 9, 2011. (Document No. 3.) Defendant admits that the March 20, 2010, accident which Plaintiff alleges in his Complaint occurred though denying that Plaintiff owned the car which he was driving. Defendant further admits that "at the time of the collision, State Farm Mutual Automobile Insurance Company policy 0502-224-48A issued to Raymond and Marsha Blankenship as the named insureds was in force and effect and provided, among other coverages and subject to the terms and conditions of the policy, underinsured motorist coverage with per person limits of $100,000 and medical payments coverage with limits of $25,000." Defendant further admits paying $8,519.70 to Plaintiff's medical providers under its medical payments coverage. Defendant otherwise basically denies Plaintiff's claims and states a number of affirmative defenses to Plaintiff's allegations respecting the legality of the provisions of its insurance policy.

The parties requested bifurcation of Count I of Plaintiff's Complaint and a stay of discovery with respect to Count II (Document No. 10.), and the District Court granted their request (Document No. 11.) Plaintiff served his First Set of Interrogatories and Requests for Production of Documents and First Set of Requests for Admissions upon Defendant on November 22, 2011. (Document Nos. 14 and 15.) On November 28, 2011, Plaintiff filed his first Notice of Rule 30(b)(6) deposition of Defendant. (Document No. 18.)[2] On January 3, 2012, Plaintiff filed his Motion Regarding

---

[2] Pursuant to his Notice of Rule 30(b)(6) Deposition, Plaintiff took the deposition of Ms. Elizabeth Hanson, a Claim Section Manager for Defendant, on January 20, 2012, as is evident from a copy of Ms. Hanson's deposition which is an exhibit to Plaintiff's Response to Defendant's

3

Sufficiency of Objections to his Requests for Admission. (Document No. 27.) On January 17, 2012, Defendant filed a Response to this Motion. (Document No. 31.) On January 23, 2012, Plaintiff filed his Motion to Compel Defendant to respond to his First Set of Interrogatories and Request for Production of Documents. (Document No. 32.) Defendant filed a Response to this Motion on February 6, 2012. (Document No. 35.) On February 15, 2012, Plaintiff filed his Notice of Second Rule 30(b)(6) Deposition of Defendant. (Document No. 36.) Defendant filed its Motion to Quash Notice of Second Rule 30(b)(6) Deposition on February 24, 2012. (Document No. 37.) On February 28, 2012, the undersigned held a telephonic status conference with counsel about the pending discovery motions and Defendant's Motion to Quash and, allowing Plaintiff a period of time to respond, continued the noticed Rule 30 (b)(6) deposition until the Court could consider Defendant's Motion. (Document Nos. 39 and 40.) On March 16, 2012, Plaintiff filed his Response to Defendant's Motion to Quash (Document No. 41.), and Defendant filed a Reply on March 23, 2012 (Document No. 46.).

**Plaintiff's Requests for Admissions.**

Plaintiff submitted seventeen Requests for Admissions[3] the first ten of which pertain to language in Defendant's policies prior to the policy in issue in this case which differs somewhat from the language in the policy in issue quoted in Plaintiff's Complaint.[4] In these Requests, Plaintiff

---

Motion to Quash Notice of Second Rule 30(b)(6) Deposition (Document No 41-2.).

[3] A copy of Defendant's Response to Plaintiff's First Set of Requests for Admissions including a recital of Plaintiff's Requests is attached as an Exhibit to Plaintiff's Motion Regarding the Sufficiency of Defendant's Objections. (Document No. 27.)

[4] The language from Defendant's policy in issue in this case quoted in the Complaint is as follows:

4

asks Defendant to admit that the differing language was in the prior policies beginning in 1988 and Defendant "did not utilize, implement or invoke it because it violated W.Va. Code § 33-6-31 and West Virginia law. The remaining seven Requests for Admissions ask Defendant to admit that (1) no correlation exists between medical payments coverage and underinsured motorist coverage such that the limits of one of the coverages affects the amount of the premiums charged for the other (Request Nos. 11 - 13.); (2) the amount of the premiums charged for underinsured motorist coverage does not depend upon other coverages in the policy or their limits (Request Nos. 14 and 15.); and (3) Defendant "did not adjust premiums for underinsured motorist coverage" when it adopted the language contained in the policy in issue and began to apply it (Request Nos. 16 and 17.). Defendant objected to each of the first ten Requests for Admissions as irrelevant stating that "prior versions of the policy language have no bearing upon the application or validity of the policy language at issue." Defendant stated that the issue presented by Plaintiff's claim for declaratory relief "is the validity

---

> The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury is the lesser of:
>
> 2.     the amount of all damages resulting from that bodily injury, reduced by:
>
> c.     any damages that have already been paid or are payable as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

The language from Defendant's policies quoted in Plaintiff's Request for Admissions No. 1 is as follows:
> The uninsured and underinsured motor vehicle coverages are excess over, but shall not duplicate any amount paid or payable to or for the insured;
>
> a. for bodily injury under the medical payments coverage; or
>
> b. under any worker's compensation , disability benefits, or similar law.

5

of the 'non-duplication' provision of [Defendant's policy] which prevents plaintiff from obtaining a windfall double recovery of the same damages under the medical payments coverage and under the uninsured motorist coverage." Defendant further stated that the facts respecting Plaintiff's request for declaratory relief contained in Count I of Plaintiff's Complaint are established and not in dispute and the issue presented is "solely a question of law for determination by the Court." Finally, Defendant stated that the first ten requests are irrelevant because the issue presented is currently being considered by the West Virginia Supreme Court of Appeals in State Farm Mutual Automobile Insurance Company v. Shatken, No. 11-1142. Defendant stated that "the discovery undertaken by plaintiff in the instant case is calculated solely for harassment." In response to Request Nos. 11 through 17, Defendant objected on grounds of relevancy for reasons stated in its responses to the first ten requests stating that each Request "has no bearing upon any issue raised in plaintiff's complaint and is not relevant to any party's claim or defense." Defendant further stated that pursuant to the filed rate doctrine, the District Court does not have jurisdiction to consider premium amounts charged for insurance policy coverages. Citing State ex rel. Citifinancial, Inc., v. Madden, 223 W.Va. 229, 672 S.E.2d 365 (2008), Defendant stated that "[i]ssues related to premium rates, loss ratios and rates of return are peculiarly within the purview of the Insurance Commissioner and cannot be raised in this action in the United States District Court for the Southern District of West Virginia." Citing W.Va.Code § 33-6-30(c) and Mitchell v. Broadnax, 208 W.Va. 36, 537 S.E.2d 882 (2000), Defendant also stated that "West Virginia law does not require a *quid pro quo* premium discount for every policy provision inserted into the policy and, therefore, this request is irrelevant."

6

By his Motion Regarding Sufficiency of Objections to Plaintiff's Requests for Admissions (Document No. 27.), Plaintiff asserts that "[i]t is not unreasonable to expect State Farm to be aware of the contents of its own insurance policies that it has issued in this state." Plaintiff then states without explaining how the matters which he requested that Defendant admit are material or relevant to this action that "[t]his Court can determine whether it deems the information sought in the requests for Admission is germane when the Court rules on the dispositive motions. Nevertheless, insofar as discovery pursuant to Rule 26 of the *Federal Rules of Civil Procedure* is concerned, Defendant State Farm's objections are not justified."

Quoting Federal Rule of Civil Procedure Rule 36(a)(1) and authority in this District, Defendant points out in its response to Plaintiff's Motion (Document No. 31.) that Federal Rule of Civil Procedure 36(a)(1) pertaining to the scope of requests for admissions provides that a party may request another party to admit "the truth of any matter within the scope of Rule 26(b)(1)" and this Court has stated that Rule 36 permits an objection that a request for admission exceeds the scope of discovery as set forth in Rule 26(b)(1). Rule 26(b)(1) provides that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Defendant asserts that "Plaintiff's requests for admission do not meet this standard and , therefore, State Farm's objections were justified." More specifically, Defendant urges respecting Plaintiff's first ten Requests for Admissions that the validity of the language in the insurance policy which covers the March 20, 2010, accident is in issue by virtue of Plaintiff's claim for declaratory relief and the language in earlier policies is not. Plaintiff states that "the facts to the coverage issue are undisputed.

7

State Farm['s] policy . . . contains language which prohibits plaintiff from recovering twice fo the same damages under both the underinsured and the medical payments coverage. Likewise, the language of W.Va. Code § 33-6-31(b) is beyond dispute and it is also undisputed that State Farm applied the policy language to plaintiff's claim. Whether or not State Farm's policy contained different language years ago is not pertinent to and, therefore, is not relevant to the sole issue raised in Count I of the Complaint." Defendant asserts respecting Plaintiff's Requests for Admissions pertaining to insurance premiums charged for insurance coverages anticipating Plaintiff's intention to that (1) the discovery is barred under the filed rate doctrine; (2) information respecting premiums charged for insurance coverages is not relevant to Plaintiff's declaratory relief claim; and (3) West Virginia law does not require *quid pro quo* premium adjustments.

**Plaintiff's Interrogatories and Requests for Production of Documents.**

Plaintiff submitted seven Interrogatories and Requests for Production of Documents.[5] Plaintiff asked Defendant to explain (1) why the policy language contained in his First Request for Admission was not enforced; (2) who made the decision to begin enforcing it; (3) who informed managers and claims representative that the policy language would be enforced; (4) when Defendant began applying the policy language; (5) when Defendant informed claims adjusters in West Virginia that the policy language would be enforced; (6) when Defendant informed its sales agents of it; and (7) what adjustments were made to premiums for underinsured motorist coverage as Defendant decided that the policy language should be enforced. By his Requests for Production of Documents, Plaintiff asked Defendant to provide a copy of Defendant's (1) communications with claims division

---

[5] A copy of Defendant's Answers to Plaintiff's First Set of Interrogatories and Response to Plaintiff's First Request for Production of Documents including a recital of Plaintiff's Interrogatories and Requests is attached as an Exhibit to Plaintiff's Motion to Compel. (Document No. 32.)

associates and sales agents in West Virginia "that in any way allude to or references the subject policy language"; (2) materials for sales agents in West Virginia to distribute to customers about the policy language; (3) other communications and promotional materials to Defendant's customers about the policy language; (4) communications and promotional materials to Defendant's customers informing them that it would begin enforcing the policy language; (5) communications about the legality of enforcing the policy language before Defendant began to enforce it; (6) declarations pages for its policy which applies in this case from 2005 to the present; and (7) renewal notices for the policy from 2005 to the present. Defendant objected to each of the Interrogatories and Request for Production of Documents stating essentially the same grounds as it stated in objecting to Plaintiff's Requests for Admission.

By his Motion to Compel (Document No. 32.), Plaintiff points out that Defendant has objected to his discovery but has not moved for a protective order or relied upon any privilege. Plaintiff disputes Defendant's claim that the Court does not have jurisdiction on the basis of State ex rel. Citifinancial v. Madden. Plaintiff indicates that in claiming entitlement to medical payments coverage under the policy, he is inquiring respecting changes in premiums when Defendant decided to enforce the policy language in issue. He is not seeking reimbursement of premiums as in State ex rel. Citifinancial v. Madden, and therefore his discovery is not foreclosed. Plaintiff further states that "[t]he history of when the pertinent language made its way into the policy and how it came to be enforced are relevant to the Court's decision regarding the legality of the provision. Plus, the absence of any evidence showing that there was an adjustment of the premium for underinsured motorist coverage could reflect that the real windfall is being garnered by State Farm."

By its Response to Plaintiff's Motion to Compel (Document No. 35.), Defendant maintains that Plaintiff's request for declaratory relief presents a legal issue – whether "State Farm's policy language, which prohibits a double recovery of damages under both the underinsured motorist coverage and the medical payments coverage provisions of the policy violates West Virginia law." Plaintiff further urges that all of the facts material to the issue are established and undisputed, and the information which Plaintiff seeks through his Interrogatories and Requests for Production of Documents is irrelevant. Defendant contends that State ex rel. Citifinancial v. Madden renders information respecting premium rates irrelevant to Plaintiff's request for declaratory relief because, as the West Virginia Supreme Court explained in that case, the West Virginia Insurance Commissioner is statutorily authorized to approve rates charges for insurance coverages and when they are approved, they are presumed to be in compliance with statutory requirements under W.Va.Code § 33-6-30(c). Defendant further points out that W.Va.Code § 33-6-30(c) provides that "[n]othing in this chapter may be construed as requiring specific line item premium discounts or rate adjustments corresponding to any exclusion, condition, definition, term or limitation in any policy of insurance, including policies incorporating statutorily mandated benefits or optional benefits which as a matter of law must be offered." Defendant urges therefore that "[t]he premiums charged have no bearing . . . upon the coverage issue before the Court – whether State Farm's policy language, which prohibits a double recovery of damages under both the MPC coverage and the UIM coverage, can be enforced." Finally, Defendant asserts that Plaintiff's Interrogatories respecting its decision to adopt policy language and the communicating of that decision and its effects to claims and sales agents and customers "bear no relationship whatsoever to the allegations in his complaint

or the issue actually present before the Court and are not relevant to the determination of whether the policy language is valid under West Virginia law."

## **Defendant's Motion to Quash Notice of Second Rule 30(b)(6) Deposition.**

On November 28, 2011, Plaintiff filed his first Notice of Rule 30(b)(6) Deposition (Document No. 18.) of a representative of Defendant on December 20, 2011, identifying eight points of inquiry as follows:

1. When State Farm determined to start offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage.
2. The manner in which State Farm determined to start offsetting payments of uninsured and underinsured motorists coverage in West Virginia by amounts paid pursuant to medical payments coverage.
3. The manner in which State Farm let its adjusters know that it would be offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage.
4. How State Farm informed agents that it was offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage.
5. How State Farm provided notice to policyholders that it was going to begin offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage.
6. When State farm readjusted premiums for medical payments coverage, insured motorist coverage and underinsured motorist coverage for policies issued in West Virginia when State Farm began offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage, if a re-adjustment of premiums for this purpose did so occur.
7. What research and calculation was done to determine how offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage would affect the coverage available to insureds.
8. What research and calculation was done to determine how offsetting payments of uninsured and underinsured motorist coverage claims in West Virginia by amounts paid pursuant to medical payments coverage would have an affect on the premium earned by State Farm for the sale of uninsured motorist coverage and underinsured motorist coverage.

On January 9, 2012, Plaintiff filed an Amended Notice rescheduling the deposition for January 20, 2012. (Document No. 29.) On February 15, 2012, Plaintiff filed his Notice of Second Rule 30 (b)(6) Deposition of a representative of Defendant identifying one point of inquiry, namely "[t]o explain how the premiums for the State Farm policy are calculated in part upon the inclusion of the non-duplication of benefits language." (Document No. 36.)

By its Motion to Quash and Memorandum in Support (Document Nos. 37 and 38.), Defendant contends that the Court should quash the notice because Plaintiff did not obtain the Court's permission to conduct a second deposition of one of its representatives as required by Rule of Civil Procedure 30(a)(2)(A)(ii) and the point of inquiry identified by plaintiff is "irrelevant and duplicative." First, citing and analyzing numerous cases, Defendant asserts that "Rule 30(a)(2)(A)(ii) does not distinguish between depositions of individuals and depositions of corporate representatives for the purpose of seeking a second deposition. Once a deposition has been taken, be it of an individual or of an entity, a party must seek leave of the court before noticing a second deposition of that individual or entity." Second, Defendant points out that Rule 30(a)(2)(A) provides that the Court may allow a second deposition as long as it is consistent with Rule 26(b)(2), i.e., not unreasonable cumulative or duplicative. Defendant then asserts based upon Rule 26(b)(1), as it did in responding to Plaintiff's Motions Regarding Sufficiency of Objections to Plaintiff's Requests for Admissions and to Compel Defendant to Respond to Plaintiff's Interrogatories and Requests for Production of Documents, that "the information sought through the invalid Second Rule 30(b)(6) Notice is not relevant to the legal issue contained in Count I of Plaintiff's complaint relating to the validity of State Farm's non-duplication language. Plaintiff erroneously believes that State Farm must demonstrate that it provided a *quid pro quo* premium discount when it included the non-

duplication language into State Farm policy form 9848A. West Virginia law is exactly the opposite[.]" Finally, Defendant contends that Plaintiff did not identify the "State Farm policy" to which he refers in his Notice and, if it is the Blankenships' policy, Plaintiff cannot state any claim respecting that policy because he is not the named insured and did not pay the premium for it.

By his Response (Document No. 41.), Plaintiff states that regardless of whether he should have obtained permission of the Court before filing his Notice of Second Rule 30(b)(6) Deposition, "the issue is now procedurally before the Court." Plaintiff states that Defendant designated Ms. Hanson as its representative to testify respecting the points of inquiry identified in Plaintiff's First Notice of Rule 30(b)(6) Deposition when Ms. Hanson, "by her own admission, has never worked in underwriting and has no experience with respect to the calculation or adjustment of insurance premiums. * * * State Farm, through Betsy Hanson, never intended to genuinely address the substance of the notice . . .." Plaintiff states that he has therefore "essentially been deprived of meaningful discovery." For this reason and because of the "quickly approaching discovery deadline", he filed his Second Notice of Rule 30(b)(6) Deposition respecting the correlation respecting premiums and the non-duplication language in its policy, an issue which Plaintiff claims Defendant raised in the <u>Shatken</u> case pending before the West Virginia Supreme Court of Appeals.[6]

---

[6] Plaintiff attached a copy of Defendant's Motion to Stay, Memorandum in Support and Exhibits thereto (Document Nos. 19 and 20) which include copies of documents from Jefferson County Circuit Court proceedings in the *Shatken* case. Jefferson County Circuit Court Judge David H. Sanders granted the Shatkens' Second Motion for Summary Judgment as to Coverage under Plaintiffs' State Farm policy concluding that "[t]he language and intent of the underinsured motorist statute could not be more clear. West Virginia Code § 33-6-31(b) plainly states that '[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by payments made **under the insured's policy or any other policy.**' W.Va.Code § 33-6-31(b)(emphasis added.) Pursuant to the clear and unambiguous language of the statute, underinsured motorist coverage may not be reduced, either directly or indirectly, by an insured's own medical payments coverage." (Document No. 41-3 at p. 38.) Defendant has appealed this ruling to the West Virginia Supreme Court of

Plaintiff contends that there are no grounds for limiting discovery under Rule 26(b)(2)(C) stating that "[i]t is State Farm that raised the issue that is at the heart of the Second Deposition Notice in its brief before the West Virginia Supreme Court of Appeals. * * * It is State Farm that has placed this very matter in issue in cases centering on the legality of the non-duplication clause. It is wholly inappropriate for State Farm to posit that the premium has been calculated based upon this particular policy language and then refuse to provide any evidence that supports that assertion."

In its Reply (Document No. 46.), Defendant asserts that Plaintiff admits that he did not obtain the Court's permission before filing his Second Notice of Rule 30(b)(6) Deposition and his Response to Defendant's Motion to Quash cannot be deemed as a belated request for permission to do so. Defendant further contends Additionally, Defendant argues that the circumstances underlying the <u>Shatken</u> case can have no bearing upon Plaintiff's entitlement to discovery in this case.[7] Defendant states that Ms. Hanson testified at the first Rule 30(b)(6) deposition that Defendant "does not 'offset' amounts paid from the medical payments coverage against the underinsured motorist coverage." Defendant reiterates that issues pertaining to insurance premium rates are for the West Virginia Insurance Commissioner and when the Insurance commissioner approves policy forms and rates, it is presumed that they in conformity with the statutory requirements.

## **DISCUSSION**

28 U.S.C. § 2201 provides as follows:

In a case of actual controversy with in its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

---

Appeals.

[7] Defendant states that "[t]he legal issue in *Shatken* is the same as the legal issue in this case as to the validity of State Farm's non-duplication provision."

14

> legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The construction of and coverage under insurance policies are commonly a subject of declaratory judgment actions. It is worth noting, however, as Courts have often recognized, that the statute allows District Courts discretion in considering issues presented in declaratory judgment actions. Wilton v. Seven Falls Co., 515 U.S. 277, 282 - 283, 115 S.Ct. 2137, 2140 - 2141, 132 L.Ed.2d 214 (1995); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998)("This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases."); Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996). When a parallel proceeding is pending in State Court, District Courts resort to a four factor test in determining whether to abstain from considering issues presented in a declaratory judgment action. United Capitol Ins. Co. v. Kapiloff, 155 F.3d at 493 - 494. One of those factors is "whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts." United Capitol Ins. Co. v. Kapiloff, 155 F.3d at 494 quoting Nautilus Ins. Co. v Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994), overruled on other grounds by Wilton v. Seven Falls Co., supra; Astorg Motor Co. v.Westfield Insurance Co., 866 F.Supp. 964, 966 (S.D.W.Va. 1994)(Chief Judge Haden). Generally, when a proceeding is pending in State Court involving the same issues of law and fact as are presented in a declaratory judgment action in the District Court, the District Court may withhold considering the issues before it as the State Court is better positioned to rule upon the issues. It appears to be undisputed that State Farm Mutual Automobile Ins. Co. v. Shatken, No. 11-1142, currently pending in the West Virginia Supreme Court of Appeals, involves the exact same issue as is before the District Court in this case. While the District Court has determined that this matter should not be stayed pending the West Virginia

Supreme Court of Appeals' consideration of the issue pending in <u>Shatken</u> (Document No. 22.), the undersigned does not regard the District Court's ruling as signaling in any way that discovery in this case should not be precluded altogether or limited in view of the <u>Shatken</u> case. Indeed, The West Virginia Supreme Court of Appeals is considering Circuit Court Judge Sanders' ruling respecting the validity of the very same State Farm policy language under W.Va. Code § 33-6-31(b) in <u>Shatken</u> as is under scrutiny in this case. Additionally, Judge Berger has recently indicated that the issue presented by Plaintiff's declaratory judgment action is quite narrow, to-wit, whether "under West Virginia law and public policy the State Farm policy is void and unenforceable and . . . State Farm is not entitled to an offset from the amount paid under the Medical Payments Coverage portion of the policy for claims under the Underinsured Motor Vehicle Coverage portion of the policy." (Document No. 45, p. 3.) These circumstances counsel limiting the scope of discovery at this point to matters relevant to the parties' claims and defenses respecting Plaintiff's claim for declaratory relief.

The threshold consideration in resolving any dispute respecting information which a party is seeking in discovery is whether the information is relevant, i.e., within the scope of discovery as contemplated by Federal Rule of Civil Procedure 26(b)(1). That Rule provides as follows respecting the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 26(b)(1) envisions two levels of relevancy – relevancy to any party's claims or defenses and relevancy to the subject matter involved in the action. Relevancy to claims or defenses is narrower than relevancy to subject matter as is evident from the Advisory Committee Notes. In amending this Rule in 2000, the Advisory Committee wrote as follows:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Relevant matters are therefore ones which relate to a party's claim or defense. Relevancy does not extend more broadly to the subject matter of the action unless the Court orders it upon a finding of good cause. Upon this framework, relevancy is conceptually broad. Information is relevant if there is any possibility that it might relate to a claim or defense of any party. When requested information appears relevant, the party objecting to providing it must demonstrate that the information has no

bearing upon a claim or defense of any party or circumstances contemplated by Rule 26(b)(2)(C) exist. See Desrosiers v. Mag Industrial Automation Systems, LLC, 675 F.Supp.2d 598, 601 (D.Md. 2009). Rule 26(b)(2)(C) provides that the Court is required to impose limitations upon the frequency or extent of discovery within the scope of Rule 26(b)(1) as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance if the discovery in resolving the issues.

"District Courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, West Virginia, 81 F.3d 416, 426 (4th Cir. 1996).

The issue presented in this matter by virtue of the parties claims and defenses respecting Plaintiff's request for declaratory relief is sharply focused upon a very limited set of facts. The issue is whether the language contained in Defendant's insurance policy covering the March 20, 2010, accident providing that the amount of damages due to bodily injury may be "reduced by * * * any damages that have already been paid or are payable as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance" is valid when W.Va. Code § 33-6-31(b) provides that "[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or

18

any other policy." For the District Court to resolve this issue, it needs to know the exact language of the insurance policy covering the accident and perhaps a few facts indicating how Defendant applied it. Plaintiff's inquiries respecting prior policies containing different language, decisions to implement or change the policies' terms, notices respecting those decisions and the correlation between premiums and coverages are clearly not relevant to the claims and defenses of the parties. They may be "subject matter" relevant, but, even if they are, Plaintiff has not shown good cause to make them. Defendant's objections to Plaintiff's Requests for Admissions, Interrogatories, Requests for Production of Documents and Second Notice of Rule 30(b)(6) Deposition will therefore be sustained. The undersigned further finds that Plaintiff issued his Second Notice of Rule 30(b)(6) Deposition improperly without seeking the Court's permission. Federal Rule of Civil Procedure 30(a)(2)(A)(ii) requires that parties request the Court's permission before taking the second deposition of an organization pursuant to Rule 30(b)(6). State Farm Mutual Insurance Co. v. New Horizont, Inc., 254 F.R.D. 227, 234 - 235 (E.D.Pa. 2008)("The policy against permitting a second deposition of an already-deposed deponent is equally applicable to depositions of individuals and organizations.") For all of these reasons, Plaintiff's Motion Regarding Sufficiency of Objections to Plaintiff's Requests for Admissions and Motion to Compel Defendant to Respond to Plaintiff's Interrogatories and Requests for Production of Documents will be denied and Defendant's Motion to Quash Notice of Second Rule 30(b)(6) Deposition will be granted.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion Regarding Sufficiency of Objections to Plaintiff's Requests for Admissions (Document No. 27.) and Motion to Compel Defendant to Respond to Plaintiff's Interrogatories and Requests for Production of Documents

(Document No. 32.) are **DENIED** and Defendant's Motion to Quash Notice of Second Rule 30(b)(6) Deposition. (Document No. 37.) is **GRANTED**.

ENTER: April 5, 2012.

R. Clarke VanDervort
United States Magistrate Judge